UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUSTIN MEADE,

       Plaintiff,

v.

NATIONAL DEBT ASSISTANCE, INC.,
BRANDON CHARLES CARR,
GREAT LAKES PROCESSING SERVICES LLC,
and JASON GEORGE CHEBAT,

       Defendants.

_____/

<u>COMPLAINT</u>

## I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq*.

2.    Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent and ongoing scheme whereby they have conspired to use false

representations and threats to coerce the payment of money from consumers across the country

who allegedly have failed to repay small, high interest rate loans.  This scheme, and similar ones

operated by hundreds of entities located in and around Los Angeles, California, Jacksonville,

Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill and Fort

1

Mill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with prosecution, litigation, derogatory credit reporting, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect the account.  Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.     The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants as alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade

Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

II.     **Jurisdiction**

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. §

2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding

plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper

because the pertinent events took place here.

III.    **Parties**

7.      Plaintiff Justin Meade is an adult, natural person residing in Kent County,

Michigan.  Mr. Meade is a "consumer" and "person" as the terms are defined and used in the

FDCPA.  Mr. Meade is a "consumer," "debtor" and "person" as the terms are defined and used in

the MRCPA and MOC.

8.      Defendant National Debt Assistance, Inc. ("NDA") is an active New York

corporation, formed on or about March 8, 2016. NDA does business under multiple and

unregistered assumed names, including NDA, NDA Inc., and NDA & Associates. Until recently,

the NDA principal place of business was 1271 Harlem Road, Suite 1, Cheektowaga, New York

14206-1962. NDA also has done business at 2005 Niagara Falls Boulevard, Suite 4, Buffalo,

New York 14228-3520. The registered agent for NDA is United States Corporation Agents, Inc.,

7014 13th Avenue, Suite 202, Brooklyn, New York 11228. NDA uses interstate commerce and

the mails in a business the principal purpose of which is the collection of debts. NDA regularly

collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or

due another. NDA is a "debt collector" as the term is defined and used in the FDCPA. NDA is a

"regulated person" as the term is defined and used in MRCPA.  Alternatively, NDA is a

"collection agency" and "licensee" as the terms are defined and used in MOC.

9.      NDA and its employees and agents have used multiple telephone numbers to

4

conduct their debt collection operation, including: 716-696-2553, 844-626-6826, 866-896-5777, 866-956-7430, 877-217-7229, 877-218-7522, and 877-744-6479. NDA obtains its toll free telephone numbers from  VoIPStreet, Inc. d/b/a VoIP Innovations, Eight Penn Center West, Suite 101, Pittsburgh, Pennsylvania 15276.

10.     NDA and its employees and agents have used the following email address to conduct their debt collection operation: ndabanking@gmail.com.

11.     NDA and its employees and agents have used multiple aliases to conduct their debt collection operation, including: Samantha Davis, Sandra Summers, Mrs. Ross, Mr. Garcia, Mr. Shapiro, Michael Cortez, and Mrs. Soft.

12.     NDA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Meade that are described in this complaint.

13.     Defendant Brandon Charles Carr is a natural person, approximately age 33, purportedly residing at 66 Pleasantview Lane, Buffalo, New York 14224-2417. Mr. Carr an owner, officer,  manager, employee and agent of defendant NDA. Mr. Carr uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Carr regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Carr is a "debt collector" as the term is defined and used in the FDCPA. Mr. Carr is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Carr is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

14.     Mr. Carr (a) created the collection policies and procedures used by defendant NDA and its employees and agents, in connection with their joint and common efforts with defendant Great Lakes Processing Services LLC ("GLPS") to collect consumer debts, (b)

managed or otherwise controlled the daily collection operations of NDA, (c) oversaw the

application of the collection policies and procedures used by NDA and its employees and agents,

(d) drafted, created, approved and ratified the tactics and scripts used by NDA and its employees

and agents to collect debts from consumers, including the tactics and scripts that were used in

their joint and common efforts with GLPS to collect an alleged debt from Mr. Meade as stated in

this complaint, (e) ratified the unlawful debt collection practices and procedures used by NDA

and its employees and agents in connection with their joint and common efforts with GLPS to

collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the

unlawful debt collection practices used by NDA and its employees and agents in connection with

their joint and common efforts with GLPS to collect an alleged debt from Mr. Meade as stated in

this complaint.

15.     Mr. Carr directly and indirectly participated in the unlawful debt collection

practices to collect an alleged debt from Mr. Meade that are described in this complaint.

16.     Defendant Great Lakes Processing Services LLC ("GLPS"), also known as Great

Lakes Processing Service LLC, is an active New York limited liability company, formed January

4, 2013, and purportedly doing business at 1800 Elmwood Avenue, Suite 2, Buffalo, New York

14207. The registered agent for GLPS is United States Corporation Agents, Inc., 7014 13th

Avenue, Suite 202, Brooklyn, New York 11228. GLPS is licensed as a "collection agency" by

the City of Buffalo, New York. GLPS uses interstate commerce and the mails in a business the

principal purpose of which is the collection of debts. GLPS regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another. GLPS is a

"debt collector" as the term is defined and used in the FDCPA. GLPS is a "regulated person" as

the term is defined and used in MRCPA.  Alternatively, GLPS is a "collection agency" and

"licensee" as the terms are defined and used in MOC.

17.    On June 7, 2017, GLPS became registered to transact business in the State of Utah. On July 17, 2017, GLPS became registered to transact business in the State of Colorado. On September 26, 2017, GLPS became registered to transact business in the State North Carolina.

18.    On June 26, 2017, GLPS became registered to transact business in the State of Florida. The registration application was filed by an attorney named Jonathan C. Frank, 700 Milam Street, Suite 1300, Houston, Texas 77002. Mr. Frank's office is merely a Regus virtual office. Until recently, Mr. Frank maintained an internet website, www.jcf-associates.com, which stated that Mr. Frank's law firm is named Jonathan C. Frank & Associates, LLC, that a debt collection entity named Consumer Solutions Group, LLC ("CSG") is a "department" of Mr. Frank's law firm, and that CSG has collected over $5,000,000.00 from consumers. The domain name for Mr. Frank's internet website was registered on January 7, 2014 by Jacquelyn A. Witman, also known as Jacquelyn Witman Vinci, 2101 Oak Village Lane, Lawrenceville, Georgia 30043-2928.  According to Mr. Frank: "Laws control the lesser men. The greater man controls the law. Be Great! See Frank."  Also according to Mr. Frank: "At Jonathan C. Frank & Associates, we know how to find debtors and make them tell their excuses to the judge."

19.    GLPS maintains an internet website, http://reputationbuild.wixsite.com/greatlakesprocessing, which states: "Great Lakes Processing Services is a payment processing company specializing in the receivables management industry. Our company works closely with attorneys and debt-collection agencies to process the payments that they have recovered for their clients." The internet website provides the following telephone numbers for GLPS: 866-803-2478 and 716-564-3101 (fax).

20.     GLPS and its employees and agents directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Meade that are described in this complaint.

21.     Defendant Jason George Chebat is a natural person, age 37, purportedly residing at 275 Pryor Avenue, Tonawanda, New York 14150-7432. Mr. Chebat is an owner, officer, member, manager, employee and agent of defendant GLPS. Mr. Chebat uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Chebat regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Chebat is a "debt collector" as the term is defined and used in the FDCPA. Mr. Chebat is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Chebat is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

22.     Mr. Chebat (a) created the collection policies and procedures used by GLPS, and its employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of GLPS, (c) oversaw the application of the collection policies and procedures used by GLPS, and its employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by GLPS, and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Meade as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by NDA, GLPS, and their employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices

used by NDA, GLPS, and their employees and agents in attempts to collect an alleged debt from Mr. Meade as alleged in this complaint.

23.     Mr. Chebat knew, or should have known, that NDA and its employees and agents have engaged in a pattern and practice of collecting alleged debts from consumers using the same unlawful debt collection practices that were used to collect an alleged debt from Mr. Meade as described in this complaint.

24.     Mr. Chebat directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Meade that are described in this complaint.

25.     GLPS processes payments for NDA pursuant to the terms of a written agreement between GLPS and NDA.

26.     Mr. Chebat knew, or should have known, that Mr. Chebat and GLPS have been providing payment processing services to NDA as an integral part of a scheme by NDA, Mr. Carr and others to use false threats of prosecution, litigation and other coercive tactics to collect money from consumers on alleged accounts.

27.     The business model for GLPS as created and implement by Mr. Chebat is to process payments for entities that regularly employ the same unlawful debt collection practices that are alleged in this complaint, and who cannot otherwise find a more traditional payment processor because of the unacceptably high percentage of transactions that are challenged by the consumer.

28.     All defendants, and other entities to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by

consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

29. An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

30. A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

31.     In 2015, Mr. Meade allegedly took out a payday loan in the amount of approximately $300.00 from an entity named FastCash USA. Any money borrowed by Mr. Meade was borrowed at an annual percentage rate that exceeded three-hundred and fifty percent. Any money borrowed by Mr. Meade was used by Mr. Meade to purchase goods or services for personal, family and household purposes.

32.     Mr. Meade allegedly failed to repay the debt and the account allegedly became delinquent.

33.     Mr. Meade expressly denies owing any money to any entity in connection with the account. Mr. Meade expressly refuses to pay any money to any entity in connection with the account. In fact, the account was settled in May of 2017.

34.     Mr. Meade asserts that his personal and financial information was stolen, and that defendants either stole Mr. Meade's personal and financial information, or they otherwise somehow obtained Mr. Meade's stolen personal and financial information.

35.     On October 31, 2017 at approximately 2:28 p.m., defendants' employee made a call, from telephone number 866-896-5777, to Mr. Meade's cellular telephone, and left the following message on Mr. Meade's voice mail: "My name is Samantha Davis. I'm calling with the State Civil and Litigation Unit. I'm calling you today regarding a criminal complaint and request for a lawsuit and judgment.  This can ultimately result in both civil and criminal charges, as well as a desposition [sic] warrant. If you are not fully educated on this matter the State is issuing a 72-hour grace period to contact us and discuss the matter further. Again, my name is

Samantha Davis and my number is 866-896-5777, extension 103."

36.     On November 1, 2017, and for the sole purpose of identifying the entities that were falsely identifying themselves as the "State Civil Litigation Unit," falsely threatening Mr. Meade with prosecution, litigation and other adverse actions, and wrongfully demanding that Mr. Meade pay money on a debt that he does not owe and defendants have no right to collect, a payment in the amount of $100.00 was made to defendants by debit card from an account with JPMorgan Chase Bank.  According to JPMorgan Chase Bank, the payment was processed that same day by defendants as: "POS DEBIT GREAT LAKES PROCESSING SERVICES 866-803-2478 NY."

37.     On November 1, 2017, defendants sent an email to Mr. Meade with attached documents, including a letter bearing the logo of "Great Lakes Processing Service, LLC," stating that Mr. Meade owed $362.14 to "NDA, INC" in connection with a payday loan originated by "FASTCASH USA," "Original Creditor Acct# 1634922-UB," and reciting that Mr. Meade would be authorizing GLPS to process payments from Mr. Meade for the benefit of National Debt Assistance, Inc.  A copy of the email and related documents are attached as Exhibit A.

38.     The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to extort the payment of money from thousands of consumers across the country through the use of false threats of criminal prosecution, false threats of civil litigation, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

12

39.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

40.     Defendants and their employees and agents falsely represented that the name of their company is the "State Civil and Litigation Unit."

41.     Defendants and their employees and agents falsely represented and falsely implied that defendants are affiliated with state government.

42.     Defendants and their employees and agents falsely represented and falsely implied that defendants are prosecutors.

43.     Defendants and their employees and agents falsely represented and falsely implied that defendants are lawyers.

44.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

45.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

46.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Meade to collect the alleged debt.

47.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Meade to collect the alleged debt.

48.     Defendants and their employees and agents falsely represented and falsely implied that a criminal complaint had been filed against Mr. Meade.

49.     Defendants and their employees and agents falsely represented and falsely implied that a criminal complaint was going to be filed against Mr. Meade.

50.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade was in the process of being criminally prosecuted.

51.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Meade was going to be criminally prosecuted.

52.     Defendants and their employees and agents falsely represented and falsely implied that a criminal warrant of some sort was going to be issued against Mr. Meade.

53.     Defendants and their employees and agents falsely represented and falsely implied that the courts, prosecutor, or other state government officials were involved in defendants' efforts to coerce the payment of money from Mr. Meade by "issuing a 72-hour grace period to contact us and discuss the matter further."

54.     Defendants and their employees and agents falsely represented and falsely implied that after seventy-two hours, the courts, prosecutor, or other state government officials would be taking some sort of adverse action against Mr. Meade unless Mr. Meade contacted defendants.

55.     Defendants did not intend to file a lawsuit against Mr. Meade in any Michigan court in efforts to collect the alleged debt.  In fact, no defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

56.     Defendants and their employees and agents falsely represented the amount of Mr. Meade's alleged debt.

57.     Defendants and their employees attempted to collect from Mr. Meade a debt that Mr. Meade does not owe.

58.     Defendants and their employees attempted to collect from Mr. Meade a debt that defendants and their employees and agents had no legal right to collect.

14

59.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

60.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

61.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

62.     The FDCPA states that it is unlawful for a debt collector to make any false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

63.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

64.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

65.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

66.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such

action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

67.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

68.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

69.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

70.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

71.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

72.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

73.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

74.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

75.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

76.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

77.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

78.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

79.     Defendants and their employees and agents falsely accused Mr. Meade of committing a crime.  Mr. Meade did not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

80.     Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary

17

advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the

state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is

not made. *People v. Maranian*, 359 Mich. 361 (1960).

81.     The FDCPA requires that, within five days of the initial communication with a

consumer in connection with the collection of any debt, a debt collector shall, unless the required

information is contained in the initial communication or the consumer has paid the debt, send the

consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

82.     Defendants and their employees and agents failed to timely send to Mr. Meade a

notice containing the information required by 15 U.S.C. § 1692g(a).

83.     Each defendant and each defendant's employees, managers, members, officers,

owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use

of the unlawful debt collection practices that are described in this complaint.

84.     Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

85.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who

refrain from using abusive debt collection practices are not competitively disadvantaged."  15

U.S.C. § 1692(e).

86.     Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators, to increase their business and profits, have knowingly chosen to use debt collection

practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those

18

debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

87.     In connection with efforts to collect an alleged debt from Mr. Meade, defendants obtained personal information regarding Mr. Meade from a subscription-based internet database (www.accurint.com) ("Accurint") operated and maintained by LexisNexis Risk Management, Inc.

88.     Alternatively, in connection with efforts to collect an alleged debt from Mr. Meade, defendants obtained personal information regarding Mr. Meade from a subscription-based internet database (www.tlo.com) ("TLO") operated and maintained by TransUnion Risk and Alternative Data Solutions, Inc.

89.     The Accurint database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through Accurint. Subscribers to Accurint must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to Accurint, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

90.     The TLO database is derived in part from non-public motor vehicle records. Accordingly, the Drivers Privacy Protection Act applies to searches made through TLO. Subscribers to TLO must sign an application stating that the subscriber will comply with the DPPA.  Further, every time a subscriber logs on to TLO, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA

for which the subscriber is requesting the personal information.  A hyper-link at the bottom of the screen takes the subscriber to the actual, full text of the DPPA.

91.     The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

92.     The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

93.     The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

94.     The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

95.     The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

96.     Defendants did not have a "permissible use" under the DPPA to obtain, disclose

or use personal information regarding Mr. Meade.

97.     Defendants used Accurint or TLO to obtain, disclose and use personal information regarding Mr. Meade.

98.     Defendants made a false representation to Accurint or TLO to obtain personal information regarding Mr. Meade that was derived from Mr. Meade's motor vehicle record.

99.     Alternatively, the entity that obtained Mr. Meade's personal information from Accurint or TLO and disclosed the personal information to defendants, made a false representation to Accurint or TLO to obtain personal information regarding Mr. Meade that was derived from Mr. Meade's motor vehicle record.

100.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

101.    Defendants knowingly obtained, disclosed and used Mr. Meade's personal information, from a motor vehicle record, for the purpose of engaging in their scam to extort the payment of money from Mr. Meade through numerous false threats, including false threats of litigation and false threats of criminal prosecution.

102.    Defendants knowingly obtained, disclosed and used Mr. Meade's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

103.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Meade's personal information obtained from Accurint or TLO.

104.    No defendant had Mr. Meade's consent, permission, authorization or waiver to obtain Mr. Meade's personal information from Accurint or TLO.

105.    A civil action under the DPPA may be commenced within four years after the

cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

106.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

107.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

108.    Each defendant knew, or should have known, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

109.    Each defendant shared Mr. Meade's personal and private financial information among the other defendants, knowing that the other defendants would engage in the unlawful debt collection practices that are described in this complaint.

110.    Each defendant owed a duty of care to Mr. Meade, not to obtain and not to share Mr. Meade's personal and private financial information with entities that each defendant knew or should have known had no right to possess the information and that each defendant knew or should have known would use that information to attempt to unlawfully coerce the payment of money from Mr. Meade. Each defendant breached the duty of care owed to Mr. Meade.

111.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be

established by jury and at trial.

**V.    Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

112.    Plaintiff incorporates the foregoing paragraphs by reference.

113.    Each defendant has violated the FDCPA.  Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

  a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural
        consequence of which is to harass, oppress, or abuse a person in connection with
        the collection of a debt;

  b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading
        representations and means in connection with the collection or attempted
        collection of a debt;

  c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means
        to collect or attempt to collect a debt from plaintiff; and

  d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

  a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

  b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

  c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

  d)    Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

114.    Plaintiff incorporates the foregoing paragraphs by reference.

115.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to 18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to 18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

116.    Plaintiff incorporates the foregoing paragraphs by reference.

117.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication

24

with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

d)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

f)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

118.    Plaintiff incorporates the foregoing paragraphs by reference.

119.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

c)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

d)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

e)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

f)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

g)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: November 13, 2017

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Kevin J. Rogers (P81303)
Attorneys for Plaintiff
6140 28th Street SE, Suite 115
Grand Rapids, Michigan 49546-6938
(616) 776-1176
ConsumerLawyer@aol.com